1  MORGAN, LEWIS & BOCKIUS LLP
   BARBARA J. MILLER, SBN 167223
2  barbara.miller@morganlewis.com
   JENNIFER L. BRADFORD, SBN 203871
3  jbradford@morganlewis.com
   5 Park Plaza, Suite 1750
4  Irvine, CA 92614
   Telephone: 949.399.7000
5  Facsimile: 949.399.7001

6

7  Attorneys for Plaintiff
   HAIR CLUB FOR MEN, LLC

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11 HAIR CLUB FOR MEN, LLC, a       | Case No. **CV11-02762 GW (JEMx)**
   Delaware limited liability company, |
12                                  | **PLAINTIFF HAIR CLUB FOR**
              Plaintiff,            | **MEN, LLC'S COMPLAINT FOR**
13                                  | **DAMAGES AND INJUNCTIVE**
           vs.                      | **RELIEF FOR:**
14 MARIA TERESA DE LA PAZ, an       | 1.   **BREACH OF CONTRACT**
   individual,
15                                  | 2.   **MISAPPROPRIATION OF**
              Defendant.            |      **TRADE SECRETS;**
16
                                    | 3.   **CONVERSION;**
17
                                    | 4.   **BREACH OF THE DUTY**
18                                  |      **OF LOYALTY;**
19                                  | 5.   **INTERFERENCE WITH**
                                    |      **PROSPECTIVE**
20                                  |      **ECONOMIC**
                                    |      **ADVANTAGE;**
21
                                    | 6.   **INTERFERENCE WITH**
22                                  |      **CONTRACTUAL**
                                    |      **RELATIONS;**
23
                                    | 7.   **FRAUD; AND**
24
                                    | 8.   **UNFAIR COMPETITION**
25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DB1/66962527.1                                        PLAINTIFF'S COMPLAINT

Plaintiff Hair Club for Men, LLC ("Hair Club" or "Plaintiff") states and alleges for its claims against Defendant Maria Teresa De La Paz ("De La Paz" or "Defendant") as follows:

## NATURE OF THE ACTION

1.      Hair Club brings this Complaint seeking to prevent irreparable harm at the hands of its current employee, De La Paz, for her breach of the confidentiality provision contained in her agreement (the "Agreement") with Hair Club, her misappropriation of Hair Club trade secrets and confidential and proprietary information in violation of the California Uniform Trade Secrets Act, her conversion of Hair Club's personal property, her breach of her duty of loyalty to Hair Club, and her tortious interference with Hair Club's contractual relations and prospective economic advantages.

2.      As a condition of De La Paz having the privilege to work for Hair Club and develop relationships with Hair Club's clients, De La Paz signed a confidentiality agreement that contained provisions prohibiting her from soliciting Hair Club clients upon employment termination and requiring her to refrain from using Hair Club's confidential and proprietary information for her own benefit. Despite De La Paz's Agreement with Hair Club, and while still employed by Hair Club, De La Paz started a calculated campaign to open up a competing business with Hair Club by unfairly and wrongfully soliciting Hair Club clients to use her services, inducing Hair Club's clients to cancel their membership contracts with Hair Club, or to not perform or use Hair Club's services pursuant to their contracts, using Hair Club's trade secrets and confidential and proprietary information to provide hair replacement services to Hair Club's clients, and converting Hair Club property for her own use.

3.      De La Paz has taken the entire month of March 2011 off under the guise of caring for her ill mother.  While taking leave from work, however, upon information and belief, De La Paz has been providing hair replacement services at a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

new business location while still employed by Hair Club.  As a result of De La Paz's conduct, several of Hair Club's existing clients have cancelled their contracts with Hair Club, stopped using the services of Hair Club, and/or stopped performing under their contracts.  In fact, at least twenty-four of Hair Club's Orange County customers have discontinued their business with Hair Club, and upon information and belief, at least some of these former clients now do business with De La Paz instead.  Upon information and belief, at least one of these former clients has been seen getting hair services from De La Paz at a new business location – the same type of services that De La Paz provided this customer at the Hair Club center located in Orange County prior to his cancellation of his contract with Hair Club.  In providing the hair services to Hair Club's former client, De La Paz is utilizing Hair Club's confidential information and trade secrets that she acquired only as a result of her employment with Hair Club.  De La Paz also took Hair Club's valuable supplies while still employed by Hair Club and used them to perform services for Hair Club clients at her own business location.

4.      Simply stated, De La Paz's conduct was calculating and made with willful disregard for her contractual and legal obligations.  In addition to her contractual breaches, De La Paz engaged in a series of tortious actions in misappropriating Hair Club's confidential information and trade secrets and in breaching her common law duties of loyalty and confidentiality.

5.      Hair Club seeks temporary, preliminary, and permanent injunctive relief against De La Paz to address her flagrant violation of her confidentiality covenant with Hair Club, to halt her misappropriation of Hair Club's trade secrets and confidential and proprietary information, to remedy her tortious interference with Hair Club's contracts with its customers, to cease her unfair competition, and to disgorge unjust enrichment gained as a result thereof.  Specifically, Hair Club seeks a temporary, preliminary, and permanent injunction enjoining De La Paz from further breaches of her contractual and common law obligations to Hair Club

1   and ordering De La Paz to cease her unfair practice of trading on specific inside

2   knowledge regarding Hair Club's hair replacement techniques.

3         6.    De La Paz's conduct has damaged Hair Club's business, goodwill, and

4   existing and prospective customer relationships and without injunctive relief, Hair

5   Club's business will continue to suffer irreparable harm.

6                             **PARTIES**

7         7.    Hair Club is a Delaware limited liability company with its principal

8   place of business in Boca Raton, Florida.  Hair Club owns and operates hair-loss

9   treatment centers throughout the United States, including a facility located at 431 S.

10   Batavia Street, Suite 201, Orange, California 92868.  The sole member of Hair

11   Club is Hair Club for Men, Ltd., Inc.  Hair Club for Men, Ltd., Inc. is a corporation

12   incorporated and existing under and by virtue of the laws of Florida with its

13   principal place of business in Boca Raton, Florida.

14         8.    Upon information and belief, De La Paz is a citizen of the State of

15   California with her principal residence located in Whittier, California.

16                   **JURISDICTION AND VENUE**

17         9.    The Court has subject matter jurisdiction over Hair Club's claims

18   pursuant to 28 U.S.C. § 1332(a), in that complete diversity of citizenship exists

19   between Hair Club and De La Paz and the amount in controversy, exclusive of

20   interest and costs, exceeds $75,000.

21        10.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because

22   Hair Club is informed and believes and thereon alleges that De La Paz resides in

23   Los Angeles County, which is encompassed within the Central District of

24   California.  Venue is also proper in this Court, because Hair Club and De La Paz

25   entered into a contract that was to be performed within this District and all of the

26   events giving rise to this action occurred within this District, including, but not

27   limited to, De La Paz's conversion of Hair Club's personal property, De La Paz's

28

1   misappropriation of Hair Club's trade secrets, and De La Paz's breach of her

2   written contract.

3                          **GENERAL ALLEGATIONS**

4          11.    Hair Club provides a variety of hair replacement services, including

5   non-surgical hair replacement systems, non-surgical topical hair loss prevention and

6   restoration programs, and, in some locations, surgical transplants.

7          12.    De La Paz started employment with Hair Club as a Stylist/Technician

8   on about  February 2, 1999.  As of date of this Complaint,  De La Paz currently

9   remains on Hair Club's payroll.

10         13.    In consideration for her employment with Hair Club, De La Paz

11  executed a valid and enforceable Agreement.  (*See* Agreement, attached hereto as

12  Exhibit 1.)

13         14.    In the performance of her duties as a Stylist/Technician, De La Paz

14  consulted with prospective Hair Club members between in-person treatments and

15  interacted directly with clients receiving treatment from Hair Club.  De La Paz also

16  maintained contacts with those members to ensure their continued satisfaction with

17  those services and, as a corollary, to promote continued membership in the Hair

18  Club.

19         15.    As part of her duties as a Stylist/Technician, De La Paz was given the

20  opportunity to have close contact with Hair Club clients.  Hair Club provides its

21  clients with a setting that affords the clients a private, discreet experience.

22  Specifically, De La Paz met regularly with customers at the Orange County Hair

23  Club Center in a private room that is not opened to the public.  De La Paz was

24  afforded the opportunity to be Hair Club's "public face" with respect to customers –

25  customers procured and developed at great expense by Hair Club.

26         16.    De La Paz was also the beneficiary of Hair Club's significant

27  investment in marketing and advertising.  Hair Club engages in an extensive

28  television and web-based advertising campaign, has established a state-of-the-art

1   internet site, and employs a telephone sales support team who, among other things,

2   field calls from prospective members, follow-up on leads, and direct prospects to

3   Hair Club locations such as the Orange County location.

4        17.    In order to provide effective services to customers, Hair Club routinely

5   trains its stylists/technicians, like De La Paz, on Hair Club techniques and practices.

6   Specifically, they learn detailed hair replacement methods that are unique to Hair

7   Club and that constitute Hair Club trade secrets.  These techniques are developed

8   by Hair Club and marketed at great expense to Hair Club members.  As part of her

9   employment, De La Paz was trained and retrained in the latest Hair Club hair

10   replacement methods.

11        18.    During her employment with Hair Club, De La Paz had access to Hair

12   Club's confidential information regarding, among other things, customer lists,

13   confidential customer-specific information (telephone numbers, for example), hair

14   replacement techniques, and pricing strategies.  This information is the product of

15   extensive work and expense by Hair Club and is highly valuable.

16        19.    In order to protect its trade secrets and other confidential and

17   proprietary information, and in consideration for employing De La Paz and

18   providing her with access to such information, Hair Club required De La Paz to

19   execute the Agreement, which contains, among other things, a non-solicitation

20   covenant.  Hair Club requires all employees, including prospective consultants and

21   hair replacement stylists/technicians to agree to this non-solicitation covenant as a

22   condition of their employment by Hair Club.

23        20.    Through the execution of this Agreement, De La Paz acknowledged

24   "that the Company's business of hair replacement is based largely on certain

25   confidential information including, but not limited to, lists of past, current and

26   prospective customers, price lists, lists of employees, and other records of the

27   Company acquired, collected and classified as the result of a substantial outlay of

28   money and time." (*See* Ex. 1, Agreement at § 3.)

21.     De La Paz further recognized "that the trade and goodwill of the Company with its customers has been established at a substantial cost to, and great effort on the part of the Company; that irreparable damage will result to the Company if such lists, records or information are obtained or used by any other person or competitor of the Company, or if said goodwill is diverted from the Company; and that [her] employment [wa]s . . . obtained . . . based upon the trust and confidence reposed by the Company in [her] with respect to the proper use of such lists, records, and information solely for the Company's benefit." (*See* Ex. 1, Agreement at § 3.)

22.     In addition, De La Paz acknowledged "that the giving of such employment affords [her] an opportunity to develop favorable relations with the customers of the Company and access to such confidential lists, records and information concerning the Company's business." (*See* Ex. 1, Agreement at § 3.)

23.     Hair Club goes to great expense identifying and acquiring new clients, maintaining existing ones, and developing solid personal relationships between Hair Club employees and clients, all of which is a critical part of Hair Club's ability to retain existing customers for years.  In particular, Hair Club goes to great lengths to ensure the confidentiality of its customers, many of whom prefer to remain anonymous.  Indeed, great emphasis is placed on confidentiality in Hair Club's promotional materials.  Thus, Hair Club's clients have come to expect that their names and contact information will be held in strictest confidence by Hair Club, and that their identifying information will not be used by current or former employees of Hair Club for the purpose of soliciting business.

24.     In view of the foregoing and in consideration for her employment by Hair Club, De La Paz agreed, voluntarily and without objection, to the following:

> During the term of my employment and thereafter, I will not at any time, directly or indirectly, use or disclose to any persons, except the Company and its duly authorized officers and employees entitled

1
2
3
4
5
6

thereto, the Company's and the Company's franchisee's and affiliate's customer lists (either past, present or prospective), price lists, lists of employees, and requirements for present and prospective customers as well as other records, statistics or other information acquired by me in the course of employment in any capacity whatsoever, or in any manner directly or indirectly aid or be party to any act, the effect of which will tend to divert, diminish or prejudice the goodwill or business of the Company or its franchisees and affiliates.

7   (*See* Ex. 1, Agreement at § 3(c).)

8         25.   In the event of the termination of her employment for any reason,
9   including resignation, De La Paz agreed to "return to the Company all of its
10  property including, without limitation, the Company's customer lists (either past,
11  present or prospective), price lists, lists of employees, requirement[s] for past,
12  present or prospective customers of the Company, as well as other records, statistics
13  or other information acquired by [her] in the course of [her] employment which is
14  in [her] possession at the time of [her] termination." (*See* Ex. 1, Agreement at §
15  3(d).)

16        26.   In the event of the termination of her employment for any reason, De
17  La Paz also agreed not to "publicize (or allow any business with which [she is]
18  associated) to publicize the fact that [she] was an employee of the Company or
19  otherwise use the Company's name for any pecuniary gain." (*See* Ex. 1,
20  Agreement at § 3(f).)

21        27.   De La Paz further acknowledged that irreparable harm would result
22  from any breach of the Agreement, and that Hair Club thus would be entitled to,
23  among other things, injunctive relief:

24
25
26
27
28

I acknowledge that irreparable damage will result to the Company, its business and property, in the event of my breach of any of the covenants and assurances contained herein, and that I have been employed by the Company primarily in reliance upon my covenants and assurances herein contained, and I agree that in the event of my breach or default with respect to any of such covenants or assurances, the Company shall be entitled to an injunction restraining my violation

of such covenants, in addition to any other remedies or damages which may be available to it.

(*See* Ex. 1, Agreement at § 3(g).)

28.    Finally, De La Paz unequivocally agreed to reimburse Hair Club for reasonable attorneys' fees and costs incurred in enforcing the terms of the Agreement:

> In the event that the Company is compelled to file a complaint in any court of competent jurisdiction for an injunction, and/or an accounting and damages, and the Company is successful in such action, I will pay reasonable counsel fees and court costs in connection therewith.

(*See* Ex. 1, Agreement at § 3(g).)

29.    The confidentiality covenant entered into by De La Paz are valid and enforceable under California law.  The Agreement was entered into upon mutual agreement and De La Paz received valuable consideration, including but not limited to employment, continued employment, and access to Hair Club's trade secrets and other confidential and proprietary information in exchange for her covenants.

30.    Around August 2010, De La Paz requested that Hair Club grant her intermittent leave under applicable family and medical leave laws to care for her ill mother.  Hair Club granted De La Paz's request for intermittent leave and allowed her to take leave as needed to care for her mother beginning on August 31, 2010.  Between August 31, 2010 and December 31, 2010, De La Paz took about five days of intermittent leave where she was away from work.  De La Paz did not take any intermittent leave in January 2011.  In February 2011, De La Paz took ten days of intermittent leave where she was away from work.  As of March 25, 2011, De La Paz had taken twenty-one days of intermittent leave where she was away from work.  In fact, at the time of the filing of this Complaint, De La Paz has not come into work at the Hair Club Orange County Center the entire month of March 2011.

31.    When they sign up for Hair Club services, clients enter into membership contracts with Hair Club.  Hair Club clients typically enter into year

long contracts and pay agreed-upon contractual fees on a monthly basis depending on the level of service for which the client signs up.  Since De La Paz's intermittent leave of absence went into effect in August 31, 2010, Hair Club's Orange County location has lost at least twenty-four clients who were serviced by De La Paz.  These twenty-four clients cancelled their membership contracts with Hair Club without any prior warning or discussion.  Hair Club has information indicating that many of Hair Club's clients have been solicited by De La Paz and now obtain hair replacement services from De La Paz.

32.    Upon information and belief, at least one of these former clients has been seen receiving hair services from De La Paz at a new office location – the same type of services that De La Paz provided this customer when he was a Hair Club customer prior to his cancellation of his contract with Hair Club.  Upon information and belief, the male customer was seated in a salon-type chair wearing a salon-type cape at the Whittier location with De La Paz present.  Upon information and belief, the salon-type cape bore the trademarked insignia of a proprietary hair care product line owned by Hair Club.

33.    The office where De La Paz was observed providing services to a male who recently cancelled his contract with Hair Club is located at 13710 Whittier Boulevard, Suite 202, Whittier, California 90605, less than twenty miles from Hair Club's Orange County office location.  Upon information and belief, De La Paz is operating an active hair replacement business out of the Whittier location.

34.    Stylists/Technicians are required to be licensed by the State Board of Cosmetology and must display a current license from the State Board of Cosmetology at the site where they perform services.  The license must be renewed every few years.  De La Paz's current license is usually displayed at the Orange County Hair Club center where she provides services to Hair Club's clients.  In March 2011, while De La Paz was out on intermittent leave, a Hair Club employee noticed that the license displayed for De La Paz was not the current license, but an

1    older expired license.  Upon information and belief, De La Paz removed her current

2    license from the Orange County Hair Club center, replaced it with an expired

3    version, and is using the current license at the Whittier location.

4         35.    Upon information and belief, De La Paz is using Hair Club trade

5    secrets and other confidential and/or proprietary information in the conduct of her

6    business, including but not limited to Hair Club's hair replacement techniques,

7    customer lists, confidential customer-specific information such as dimensions and

8    specifications of client's non-surgical hair systems, detailed hair replacement

9    methods that are unique to Hair Club, and confidential client billing information.

10        36.    De La Paz, while still employed and being compensated by Hair Club,

11   was simultaneously and competitively working at her new office location in

12   Whittier.  She also converted and misappropriated Hair Club's proprietary

13   information and property, including, but not limited to, Hair Club capes and various

14   other hair replacement products owned by Hair Club.  Several heads of replace hair

15   (known as "hair systems") are also missing for the clients serviced by De La Paz

16   who have recently cancelled their contracts with Hair Club.  In addition, two other

17   clients who were serviced by De La Paz recently came into the Orange County Hair

18   Club center for their scheduled appointments.  Because De La Paz was not there at

19   the time of their scheduled appointments (she was out on leave), another Hair Club

20   Stylist/Technician was going to provide them services.  The heads of hair for these

21   clients, however, were also missing.  At least one other head of hair for one of De

22   La Paz's clients who is scheduled for an upcoming appointment is also missing.

23        37.    Upon information and belief, De La Paz also took from Hair Club

24   several containers of "ultra hold" adhesive.  She also had access to information and

25   charts containing highly confidential information such as customer-specific

26   measurements, specifications, and systems used by those customers.  De La Paz

27   also had access to Hair Club's computer system containing confidential customer

28

1   information including customer telephone numbers, addresses, payment history,
2   and membership information.

3       38.    All of this conduct occurred while De La Paz was still employed by
4   Hair Club.  Upon information and belief, De La Paz has been working at the
5   Whittier location during the month of March 2011, when she was absent from her
6   job at Hair Club supposedly to care for her ill mother.

7       39.    At least twenty-four former Hair Club customers have cancelled their
8   memberships with Hair Club since De La Paz's request for intermittent leave of
9   absence was granted on August 31, 2010.  This is a highly unusual rate of
10  cancellation.  Upon information and belief, De La Paz has directly solicited the
11  business of her Hair Club clients.

12      40.    As described above, De La Paz has caused Hair Club to lose client and
13  revenue, and, more important, damaged its reputation and goodwill.  Unless and
14  until this De La Paz's improper conduct is restrained, Hair Club faces additional
15  harm in the future.

16              **FIRST CLAIM FOR RELIEF**

17                **(Breach of Contract)**

18                **(Against De La Paz)**

19      41.    Hair Club hereby incorporates by reference and re-alleges the
20  allegations of Paragraphs 1 through 40 as if fully set forth herein.

21      42.    The Agreement is a duly executed and enforceable contract, giving rise
22  to legal obligations between De La Paz and Hair Club.  Pursuant thereto, De La Paz
23  agreed, among other things, that she would not, directly or indirectly, use Hair
24  Club's confidential and proprietary information for her own benefit.

25      43.    The confidentiality covenant is valid and enforceable under California
26  law.

27
28

44.     Hair Club provided consideration for and fully performed its obligations under the Agreement by, among other things, employing De La Paz and teaching her proprietary hair replacement techniques during her employment.

45.     De La Paz breached her obligations under the Agreement by, among other things, using Hair Club's proprietary and confidential information to perform services for Hair Club customers and working at a new location, in a hair replacement services business in competition with Hair Club.  De La Paz's breach of her confidentiality covenant continues to this day, and will continue unless and until she is ordered to abide by the obligations to which she agreed when she executed the Agreement.

46.     Hair Club has suffered damages as the direct and proximate consequence of De La Paz's breach of her covenant contained in the Agreement.

47.     Hair Club is entitled to recover compensatory and consequential damages as a result of De La Paz's breach of the Agreement, and is further entitled to prospective injunctive relief to prevent her from engaging in further misconduct. (*See* Ex. 1, Agreement at § 3(g).)

## SECOND CLAIM FOR RELIEF

### (Misappropriation of Trade Secrets)

### (Against De La Paz)

48.     Hair Club hereby incorporates by reference and re-alleges the allegations of Paragraphs 1 through 47 as if fully set forth herein.

49.     A confidential and special relationship existed between Hair Club and De La Paz as a result of, among other things, her execution of the Agreement and Hair Club's conferring specialized knowledge and confidential information upon De La Paz.  De La Paz knew of the confidential nature of the trade secrets.  In addition, De La Paz agreed in writing to preserve the secrecy of Hair Club's confidential information and trade secrets.

50.   Hair Club's confidential and proprietary business information qualifies for trade secret protection under California law.  Hair Club's business information derives independent economic value and gives Hair Club an advantage over its competitors because such information is not generally known to Hair Club's competitors or to others in the industry, and because it is not easily acquired through proper means by Hair Club's competitors or by others in the industry.

51.   Hair Club has invested substantial time and money in developing this trade secret information, and Hair Club has taken and continues to take reasonable measures to protect and preserve the secrecy of its trade secrets.  Access to Hair Club's trade secrets is given to Hair Club's employees only to the extent required by their positions and only upon their execution of Agreement similar to the one at issue in this case.

52.   Upon information and belief, in breach of both the Agreement and California law, De La Paz misappropriated Hair Club's trade secrets using improper means by actually using them in the context of her performance of hair replacement services at the Whittier location.  Among other things, De La Paz used confidential information relating to the identity of Hair Club customers, as well as the types of hair replacement methods and styling received.

53.   Hair Club is informed and believes that De La Paz has wrongfully misappropriated and used Hair Club's trade secrets for her own benefit.

54.   Hair Club has suffered and will continue to suffer damages as a direct and proximate result of the misappropriation of its trade secrets by De La Paz, for which it is entitled to recover damages from De La Paz pursuant to the California Uniform Trade Secrets Act and the common law.

55.   De La Paz's conduct as alleged in this complaint has been wrongful, willful, and malicious.  Accordingly, Hair Club is entitled to recover from De La Paz punitive damages, in addition to its actual damages, reasonable attorneys' fees, costs, and injunctive relief.

## THIRD CLAIM FOR RELIEF

### (Conversion of Personal Property)

### (Against De La Paz)

56.     Hair Club hereby incorporates by reference and re-alleges the allegations of Paragraphs 1 through 55 as if fully set forth herein.

57.     While still employed by Hair Club, upon information and belief, De La Paz surreptitiously and without authorization took property from Hair Club, including as many of five hair replacement systems. Upon information and belief, De La Paz also took several containers of "ultra hold" adhesive and at least one salon-type cape, and used them for her own purposes.

58.     De La Paz exercised dominion, ownership, and control over Hair Club's personal property by using it in performing services competing with Hair Club's, thereby permanently depriving Hair Club of the use of its personal property.

59.     Hair Club has suffered damages as a result of De La Paz's actions.

60.     De La Paz's actions were malicious, wanton, reckless, willful, and/or oppressive and such conduct was outrageous as a result of the evil motive or reckless indifference, thus entitling Hair Club to an award of punitive and exemplary damages.

## FOURTH CLAIM FOR RELIEF

### (Breach of the Duty of Loyalty)

### (Against De La Paz)

61.     Hair Club hereby incorporates by reference and re-alleges the allegations of Paragraphs 1 through 60 as if fully set forth herein.

62.     De La Paz owed a common law duty of loyalty to Hair Club, separate and distinct from the duties created by the Agreement, based on, among other things, the special confidence reposed in her by Hair Club.

63.     De La Paz breached this duty by, among other things, misappropriating trade secrets, misusing confidential information, and soliciting

1   Hair Club clients and employees prior and subsequent to the end of her

2   employment.

3       64.     De La Paz further breached this duty by using Hair Club's confidential

4   customer information, techniques, and trade secrets for the benefit of herself and a

5   competing business.  This conduct occurred while De La Paz was employed by

6   Hair Club.

7       65.     De La Paz failed to use her best efforts to promote and serve Hair Club

8   while she was still employed. Hair Club is entitled to recover compensatory and

9   consequential damages as a result of De La Paz's breach of loyalty.  In addition,

10  Hair Club is entitled to disgorgement of all compensation paid to De La Paz during

11  the period that she was working with divided loyalties to Hair Club's detriment.

12      66.     De La Paz's actions have caused and will continue to cause damage to

13  Hair Club.

14      67.     De La Paz's actions were malicious, wanton, reckless, willful, and/or

15  oppressive and such conduct was outrageous as a result of the evil motive or

16  reckless indifference, thus entitling Hair Club to an award of punitive and

17  exemplary damages.

## FIFTH CLAIM FOR RELIEF

### (Tortious Interference with Prospective Economic Advantage)

### (Against De La Paz)

18

19

20

21      68.     Hair Club hereby incorporates by reference and re-alleges the

22  allegations of Paragraphs 1 through 67 as if fully set forth herein.

23      69.     At all times relevant hereto, Hair Club had valid and enforceable

24  contracts with its clients.  These contracts describe the type of hair replacement

25  technique that will be used on the client and the price of the service.  These

26  contracts also carry a significant probability of future contracts and business, as

27  most customers continue as clients on a long-term basis.

28

70.     Upon information and belief, De La Paz had knowledge of the existence of these contracts.

71.     Despite this knowledge, De La Paz intentionally solicited Hair Club clients to leave Hair Club and obtain hair replacement services from her.  De La Paz interfered with Hair Club's prospective economic advantage by, among other things, encouraging Hair Club clients to cancel their contracts with Hair Club. Many of these clients would have signed new contracts with Hair Club, upon the expiration of their current contracts, for continued hair replacement services.

72.     This intentional interference with the contractual relationships between Hair Club and its customers has induced – and likely will continue to induce – clients to cancel their contracts with Hair Club in the future.  Moreover, this intentional interference was improper because, among other things, it was the product of De La Paz's breach of the Agreement and her duty of loyalty to Hair Club, and because it was the result of De La Paz's misuse of insider and/or confidential information.

73.     By engaging in the aforementioned tortious conduct with the intent to do harm to Hair Club and its reputation and goodwill, De La Paz is intentionally attempting to interfere with Hair Club's ability to attract and retain customers and potential customers and wrongfully interfering with future business with these customers.

74.     Hair Club has suffered and will continue to suffer damages as a result of De La Paz's actions.

75.     De La Paz's efforts to discourage clients and prospective clients from using Hair Club and attempting to divert Hair Club's clients to her new business – all while employed by Hair Club – damaged Hair Club's goodwill, existing business relationships, contracts, and prospective business relationships.

76.     De La Paz's actions were malicious, wanton, reckless, willful, and/or oppressive and such conduct was outrageous as a result of the evil motive or

1    reckless indifference, thus entitling Hair Club to an award of punitive and

2    exemplary damages.

3                              **SIXTH CLAIM FOR RELIEF**

4                **(Tortious Interference with Contractual Relations)**

5                              **(Against De La Paz)**

6          77.    Hair Club hereby incorporates by reference and re-alleges the

7    allegations of Paragraphs 1 through 76 as if fully set forth herein.

8          78.    At all times relevant hereto, Hair Club had valid and enforceable

9    contracts with its clients.  These contracts describe the type of hair replacement

10   technique that will be used on the client and the price of the service.

11         79.    Upon information and belief, De La Paz had knowledge of the

12   existence of these contracts.

13         80.    Despite this knowledge, De La Paz intentionally solicited Hair Club

14   clients to leave Hair Club and obtain hair replacement services from her.  De La

15   Paz interfered with Hair Club's contracts by, among other things, encouraging Hair

16   Club clients to cancel their contracts with Hair Club.

17         81.    This intentional interference with the contractual relationships between

18   Hair Club and its customers has induced clients to cancel their contracts with Hair

19   Club in the future.  Moreover, this intentional interference was improper because,

20   among other things, it was the product of De La Paz's breach of the Agreement and

21   her duty of loyalty to Hair Club, and because it was the result of De La Paz's

22   misuse of insider and/or confidential information.

23         82.    By engaging in the aforementioned tortious conduct with the intent to

24   do harm to Hair Club and its reputation and goodwill, De La Paz intentionally

25   interfered with Hair Club's current contracts with customers.

26         83.    Hair Club has suffered and will continue to suffer damages as a result

27   of De La Paz's actions.

28

84.     De La Paz's efforts to discourage clients from using Hair Club and attempting to divert Hair Club's clients to her new business -- all while employed by Hair Club -- damaged Hair Club's goodwill, existing business relationships, contracts, and prospective business relationships.

85.     De La Paz's actions were malicious, wanton, reckless, willful, and/or oppressive and such conduct was outrageous as a result of the evil motive or reckless indifference, thus entitling Hair Club to an award of punitive and exemplary damages.

## SEVENTH CLAIM FOR RELIEF

### (Fraud)

### (Against De La Paz)

86.     Hair Club hereby incorporates by reference and re-alleges the allegations of Paragraphs 1 through 85 as if fully set forth herein.

87.     During her employment, De La Paz requested that she be allowed to take an intermittent leave of absence to care for her ill mother.

88.     Hair Club granted De La Paz's request for intermittent leave under the Family and Medical Leave Act and California Family Rights Act on or about August 31, 2010.

89.     In March of 2011, De La Paz told Hair Club that she was taking time off to care for her ill mother.  In March 2011, De La Paz has taken at least twenty-one days of intermittent leave where she was away from work.

90.     Each time De La Paz requested a day off of work to care for her ill mother, she either told Hair Club employees and/or left messages for Hair Club employees that she was taking the time off to care for her mother.  Upon information and belief, De La Paz has not been caring for her mother during all of the work time that she took off, but instead has been performing hair replacement services for Hair Club clients at a new location in Whittier and has been unfairly competing with Hair Club.  Upon information and belief, De La Paz knew her

1    statements that she was going to care for her ill mother during all work time that
2    she took off were false.

3        91.    Hair Club relied on De La Paz's statements in agreeing to give her the
4    time off.  Had Hair Club known De La Paz was going to open a competing
5    business, it would not have allowed the time off.

6        92.    Hair Club has suffered and will continue to suffer damages as a result
7    of De La Paz's fraudulent actions.

8        93.    De La Paz's fraudulent actions were malicious, wanton, reckless,
9    willful, and/or oppressive and such conduct was outrageous as a result of the evil
10   motive or reckless indifference, thus entitling Hair Club to an award of punitive and
11   exemplary damages.

12                          **EIGHTH CLAIM FOR RELIEF**

13                              **(Unfair Competition)**

14                              **(Against De La Paz)**

15       94.    Hair Club hereby incorporates by reference and re-alleges the
16   allegations of Paragraphs 1 through 93 as if fully set forth herein.

17       95.    Upon information and belief, De La Paz has wrongfully used Hair
18   Club's confidential and proprietary information and trade secrets, including, but not
19   limited to, techniques, processes, documents, customer contacts, and customer-
20   specific confidential information, without Hair Club's consent, for her own
21   individual benefit and to further her competitive endeavors.

22       96.    By doing so, De La Paz is unfairly competing against Hair Club by
23   taking advantage of her access to Hair Club's confidential and proprietary
24   information and trade secrets.

25       97.    In addition, De La Paz is unfairly competing against Hair Club by
26   converting Hair Club property for her own use.

27       98.    De La Paz's actions are in commerce.

28

1    99.    Hair Club has been harmed by De La Paz's actions.  De La Paz should

2    be enjoined from further harming Hair Club.

3    100.    In addition, Hair Club is entitled to the restitution of the value of its

4    property that De La Paz has converted for her own use.

## PRAYER FOR RELIEF

6    **WHEREFORE,** Hair Club prays this Court to enter judgment against De La

7    Paz and:

8    1.    Permanently enjoin De La Paz from using, disclosing, or

9    otherwise misappropriating any of Hair Club's trade secrets or other confidential or

10   proprietary information;

11   2.    Prospectively enjoin De La Paz, for a period of two years

12   following the entry of judgment against them, from directly or indirectly soliciting

13   any Hair Club customers or employees;

14   3.    Award Hair Club compensatory damages of an amount to be

15   proved at trial;

16   4.    Award Hair Club its costs and attorneys' fees incurred in this

17   dispute;

18   5.    Award Hair club exemplary and punitive damages;

19   6.    Award Hair Club pre- and post-judgment interest; and

20   7.    Award Hair Club such other and additional relief as the Court

21   may deem just and proper.

22

23   Dated:  March 31, 2011                        MORGAN, LEWIS & BOCKIUS LLP

24

25   By _____

26   Barbara J. Miller
     Attorneys for Plaintiff
     HAIR CLUB FOR MEN, LLC

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

# EXHIBIT 1



**HAIR CLUB FOR MEN, LTD.**

### NON–COMPETE AGREEMENT

In connection with my employment as ~~Teresa DeLaPaz~~ for HAIR CLUB FOR MEN, LTD. (the "Company"), I acknowledge and/or agree as follows: ~~(Stylist)~~

1. I have been advised that it is the express policy of the Company that any employee who previously worked for a competitor shall not solicit former customers of the competitor. If the name of a former customer should arise as a new lead from an advertisement of the Company, it is permissible for me to solicit this customer using the Company's new lead; provided, however, before such former customer is solicited, I must call it to the attention of management of the Company. A violation of this policy of the Company may result in my immediate dismissal.

2. I have advised the Company that I have no present or previous agreements or understanding of a contractual nature, express or implied, with any previous employer, which would prevent me from accepting employment with the Company. I agree that should any previous employer dispute my right to accept employment with the Company, I will indemnify the Company with respect to any liability (including attorneys' fees) resulting from such a controversy.

3. I acknowledge that the Company's business of hair replacement is based largely on certain confidential information including, but not limited to, lists of past, current and prospective customers, price lists, lists of employees, and other records of the Company acquired, collected and classified as the result of a substantial outlay of money; that the trade and goodwill of the Company with its customers has been established at a substantial cost to, and great effort on the part of the Company; that irreparable damage will result to the Company if such lists, records or information are obtained or used by any other person or competitor of the Company, or if said goodwill will be diverted from the Company; and that my employment is being obtained and is based upon the trust and confidence reposed by the Company in me with respect to the proper use of such lists, records, and information solely for the Company's benefit. I further acknowledge that the giving of such employment affords me an opportunity to develop favorable relations with the customers of the Company and access to such confidential lists, records and information concerning the Company's business. In consideration thereof, and in consideration of my employment by the Company I hereby agree that:

a) In the event of the termination of my employment, at any time, whether by discharge or resignation or on account of any other reason, I will not for a period of two (2) years from the date of such termination engage in the business of hair replacement, on my own account, or become interested in such business directly or indirectly, as an individual, partner, stockholder, director, officer, clerk, principal, agent, employee, or in any other relation or capacity whatsoever, within a radius of ten (10) miles of any Hair Club center operated by the Company or any of its franchisees or affiliates.

Page 1

b)  In the event of the termination of my employment, at any time, whether by discharge or resignation or for any other reason, I will not for a period of two (2) years from the date of termination directly or indirectly solicit, circularize or aid in soliciting or circularizing (generally or specifically ) any business relating to hair replacement from any customer or customers of the Company, and will not deal with, or provide hair replacement services to, any customers who have, within two (2) years prior to the cessation of my employment, dealt with the Company.  In no event shall I be restrained from soliciting or servicing the Company's customers for a period beyond two (2) years after the termination of my employment.

c)  During the term of my employment and thereafter, I will not at any time, directly or indirectly, use or disclose to any persons, except the Company and its duly authorized officers and employees entitled thereto, the Company's and the Company's franchisee's and affiliate's customer lists (either past, present or prospective), price lists, lists of employees, and requirements for present and prospective customers as well as other records, statistics or other information acquired by me in the course of employment in any capacity whatsoever, or in any manner directly or indirectly aid or be party to any act, the effect of which will tend to divert, diminish or prejudice the goodwill or business of the Company or its franchisees and affiliates.

d)  Upon the termination of employment at any time, whethr by discharge or resignation or for any other reason, I will return to the company all of its property including, without limitation, the Company's customer lists (either past, present or prospective), price lists, lists of employees, requirement for past, present or prospective customers of the Company, as well as other records, statistics or other information acquired by me in the course of my employment which is in my possession at the time of my termination.

e)  In the event of the termination of my employment, I will not for a period of two (2) years from the date of such termination employ or seek to employ any person or persons employed or engaged by the Company without the consent of the Company or its franchisees or affiliates, as the case may be, or otherwise induce any such person to leave his or her employment.

f)  In the event of the termination of my employment, I will not publicize (or allow any business with which I am associated) to publicize the fact that I was an employee of the Company or otherwise use the Company's name for any pecuniary gain.  Notwithstanding the foregoing, I may disclose the fact of my employment with the Company on resumes for bona fide prospective employment.

g) I acknowledge that irreparable damage will result to the Company, its business and property, in the event of my breach of any of the convenants and assurances contained herein, and that I have been employed by the Company primarily in reliance upon my covenants and assurances herein contained, and I agree that in the event of my breach or default with respect to any of such covenants or assurances, the Company shall be entitled to an injunction restraining my violation of such covenants, in addition to any other remedies or damages which may be available to it. In the event that the Company is compelled to file a complaint in any court of competent jurisdiction for an injunction, and/or an accounting and damages, and the Company is successful in such action, I will pay reasonable counsel fees and court costs in connection therewith.

h) The invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provisions.

4. This Non−Compete Agreement between the Company and myself supercedes all previous Non−Compete Agreements.

HAIR CLUB FOR MEN, LTD.

Orange County
Center

770 TheCity Dr #4100
Street Address

Orange CA 92868
City / State / Zip code

By: _____
(HCM Representative)

_____
(Employee)

2 - 5 - 99
_____
(DATE)

F:\123DATA\DENISE\NONCMP28.WK3

Page 3

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is John E. McDermott.

The case number on all documents filed with the Court should read as follows:

## CV11- 2762 GW (JEMx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| **[X] Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | **[ ] Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | **[ ] Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

AO 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

CENTRAL          District of CALIFORNIA

HAIR CLUB FOR MEN, LLC, a Delaware
limited liability company,

*Plaintiff*

v.

MARIA TERESA DE LA PAZ, an
individual,

*Defendant*

)
)
)
)
)
)
)
)

Civil Action No.   **CV11-02762 GW (JEMx)**

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*
MARIA TERESA DE LA PAZ
9542 Rufus Avenue
Whittier, CA  90604-1038

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Barbara J. Miller, SB#167223
Jennifer L. Bradford, SB#203871
MORGAN, LEWIS & BOCKIUS LLP
5 Park Plaza, Suite 1750
Irvine, CA  92614

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: MAR 3 1 2011 _____

ROLLS ROYCE PASCHAL

*Signature of Clerk or Deputy Clerk*

1144

AO-440

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4(l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.


Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information regarding attempted service, etc:

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

HAIR CLUB FOR MEN, LLC, a Delaware limited liability company

**DEFENDANTS**

MARIA TERESA DE LA PAZ, an individual

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Barbara J. Miller/Jennifer L. Bradford
MORGAN, LEWIS & BOCKIUS LLP
5 Park Plaza
Suite 1750
Irvine, CA  92614
949.399.7000

Attorneys (If Known)

**II.   BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III.   CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV.   ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V.   REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes  ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes  ☒ No   ☒ **MONEY DEMANDED IN COMPLAINT: $** Unspecified

**VI.   CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause.  Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. Section 1332(a)

**VII.   NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☒ 190 Other Contract | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 195 Contract Product Liability | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 196 Franchise | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | **REAL PROPERTY** | | ☐ 445 American with Disabilities - Employment | ☐ 650 Airline Regs | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety/Health | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS - Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number:   CV11-02762 GW (JEMx)

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)   CIVIL COVER SHEET   Page 1 of 2

CCD-JS44

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  [X] No   [ ] Yes

If yes, list case number(s):

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  [X] No   [ ] Yes

If yes, list case number(s):

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ]   A. Arise from the same or closely related transactions, happenings, or events; or

[ ]   B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]   C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]   D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

[ ]   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Delaware and Florida |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

[ ]   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange County and Los Angeles County | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____   Date March 31, 2011

Barbara J. Miller

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |